UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHARYNNE PATRICE MACON, o/b/o M.P.C.M.C., <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | No. 2:17-cv-01594-KJN <br><br><br> ORDER |

Plaintiff M.P.C.M.C., by and through his mother Sharynne Patrice Macon, seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner") denying plaintiff's application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act").[1] In his motion for summary judgment, plaintiff principally argues that the Commissioner's decision is not supported by substantial evidence and that the Commissioner did not comply with the requirements of the Act. (ECF No. 13) The Commissioner opposed plaintiff's motion and filed a cross-motion for summary judgment. (ECF No. 15.) Thereafter, plaintiff filed a reply brief. (ECF No. 16.)

After carefully considering the record and the parties' briefing, the court DENIES plaintiff's motion for summary judgment, GRANTS the Commissioner's cross-motion for

---

[1] This action was referred to the undersigned pursuant to Local Rule 302(c)(15).

1

summary judgment, and AFFIRMS the Commissioner's final decision.

I.     BACKGROUND

Plaintiff was born on March 9, 2007, and was a child under the age of 18 at the time of his October 30, 2013 application for SSI.[2] (Administrative Transcript ("AT") 19, 170.) In his application for SSI, he alleged that his disability began at birth. (AT 170.) Plaintiff's mother claimed that plaintiff was disabled due to anxiety, obsessive compulsive disorder, trouble being around and dealing with people, trouble focusing and concentrating, lack of motivation, anger problems, and autism. (AT 180.) After plaintiff's application was denied initially and on reconsideration, an ALJ conducted a hearing on February 4, 2016. (AT 62-90.)

The ALJ subsequently issued a decision dated May 11, 2016, determining that plaintiff had not been under a disability as defined in the Act, since October 30, 2013, the date the application was filed. (AT 19-33.) The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on May 30, 2017. (AT 1-3.) Plaintiff subsequently filed this action on August 1, 2017, to obtain judicial review of the Commissioner's final decision. (ECF No. 1.)

II.     ISSUES PRESENTED

On appeal, plaintiff raises two issues: (1) whether the ALJ improperly weighed the medical opinion evidence and (2) whether the ALJ's functional equivalence analysis is supported by substantial evidence.

III.     LEGAL STANDARDS

    A.     General Standard of Review

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340

---

[2] Because the parties are familiar with the factual background of this case, including plaintiff's medical and mental health history, the court does not exhaustively relate those facts in this order. The facts related to his impairments and treatment will be addressed insofar as they are relevant to the issues presented by the parties' respective motions.

F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citation omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

B.  Sequential Evaluation for Childhood Disability Claims

An individual under the age of 18 is considered disabled if he "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). The regulations prescribe a three-step sequential evaluation process to determine whether a child's impairment or combination of impairments results in marked and severe functional limitations:

(1) Is the child engaged in substantial gainful activity? If so, the child is not disabled, regardless of his medical condition, age, education, or work experience. If not, the analysis proceeds to step two. 20 C.F.R. § 416.924(a), (b).

(2) Does the child have a medically determinable impairment or combination of impairments that is severe, i.e., that causes more than minimal functional limitations? If not, the child is not disabled. If so, the analysis proceeds to step three. 20 C.F.R. § 416.924(a), (c).

(3) Does the child's impairment or combination of impairments meet, medically equal, or functionally equal a listing? If not, the child is not disabled. If so, and the duration requirement is satisfied, the child is disabled. 20 C.F.R. § 416.924(a), (d).

To meet or medically equal a listing, the child's impairment(s) must meet or medically equal a set of criteria for the particular impairment as outlined in the Listings, 20 C.F.R. Part 404, Subpart P, App. 1. See 20 C.F.R. § 416.924(d); Sullivan v. Zebley, 493 U.S. 521, 530 (1990) ("For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria").

3

To determine whether a child's impairment(s) functionally equals a listing, the ALJ must assess the functional limitations caused by the child's impairment(s) in six domains: (i) acquiring and using information; (ii) attending and completing tasks; (iii) interacting and relating with others; (iv) moving about and manipulating objects; (v) caring for yourself; and (vi) health and physical well-being. 20 C.F.R. § 416.926a(a), (b)(1). A child's impairment(s) functionally equals a listing when it is of listing-level severity, i.e., if it results in "marked" limitations (limitations that interfere seriously with the child's ability to independently initiate, sustain, or complete activities) in at least two domains of functioning, or "extreme" limitations (limitations that interfere very seriously with the child's ability to independently initiate, sustain, or complete activities) in at least one domain of functioning. 20 C.F.R. § 416.926a(a), (e).

IV. DISCUSSION

   A. Summary of the ALJ's Findings

The ALJ evaluated plaintiff's entitlement to SSI pursuant to the above-mentioned three-step analytical framework. At the first step, the ALJ found that plaintiff had not engaged in substantial gainful activity since October 30, 2013, plaintiff's SSI application date. (AT 22.) At the second step, the ALJ determined that plaintiff had the following severe impairments: anxiety disorder, oppositional defiant disorder ("ODD"), and attention-deficit hyperactivity disorder ("ADHD"). (Id.) However, at the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that meets or medically equals a listed impairment. (Id.) Additionally, the ALJ determined that plaintiff did not have an impairment or combination of impairments that functionally equals a listing. (Id.) Accordingly, the ALJ determined that plaintiff had not been disabled, as defined in the Act, from October 30, 2013, through the date of the ALJ's decision. (AT 33.)

   B. Plaintiff's Substantive Challenges to the Commissioner's Determinations

As the Ninth Circuit has explained, "the key question is not whether there is substantial evidence that could support a finding of disability, but whether there is substantial evidence to support the Commissioner's actual finding that claimant is not disabled." Jamerson v. Chater, 112 F.3d 1064, 1067 (9th Cir. 1997). Plaintiff's arguments here demonstrate, at most, that there

4

may be substantial evidence to support plaintiff's interpretation of the record. They do not, however, undermine the ALJ's decision.

1. *Whether the ALJ improperly weighed the medical opinion evidence*

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. Holohan v. Massanari, 246 F.3d 1195, 1201-02 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). Generally speaking, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than a non-examining physician's opinion. Holohan, 246 F.3d at 1202.

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) there are contradictory opinions in the record; and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. Lester, 81 F.3d at 830–31. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons. Id. at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (supported by different independent clinical findings), the ALJ may resolve the conflict. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). The regulations require the ALJ to weigh the contradicted treating physician opinion, Edlund, 253 F.3d at 1157,[3] except that the ALJ in any event need not give it any weight if it is conclusory and supported by minimal clinical findings. Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751. The opinion of a non-examining professional, by itself, is insufficient to reject the opinion of a treating or examining professional. Lester, 81 F.3d at 831.

---

[3] The factors include: (1) length of the treatment relationship; (2) frequency of examination; (3) nature and extent of the treatment relationship; (4) supportability of diagnosis; (5) consistency; and (6) specialization. 20 C.F.R. § 404.1527.

Plaintiff asserts that the ALJ erred by rejecting the opinion evidence of Adrienne K. Hall, M.D. and Erika Baker without providing appropriate reasons. (ECF No. 13-1 at 14-21.)

i. **Opinion of Dr. Hall**

As the ALJ accurately summarized, "Dr. Hall provided a checklist medical source statement dated April 2014 after treating the claimant twice with an almost two year gap in between treatment sessions." (AT 25, 215-19, 492-514.) Dr. Hall checked boxes to opine that plaintiff had extreme limitations in "interacting and relating with others," a marked limitation in "attending and completing tasks," a less than marked limitation in "acquiring and using information," and no evidence of limitation in the remaining three domains. (AT 216.)

Considering this opinion, the ALJ first observed that "[i]t is generally understood that checklist opinions are weak evidence at best and rejection of a treating physician's opinion is appropriate when the conclusions are in the form of a checklist and the treating notes do not provide objective medical evidence of the limitations asserted." (AT 26 (internal quotation marks omitted) (citing SSR 96-2).) This is consistent with the standard that an ALJ may discredit a treating physician's opinion, if it is conclusory and supported by minimal clinical findings. See Meanel, 172 F.3d at 1114.

In light of this, the ALJ afforded Dr. Hall's opinion little weight because

> it is only based upon two treatment sessions with the claimant and does not address how non-compliance with medication would affect his behavior. Further, it is inconsistent with the treatment notes showing that Dr. Hall repeatedly assessed the claimant with a GAF[4] score of 51-60 indicating moderate symptoms giving the impression that Dr. Hall's opinion is based upon the claimant's mother's subjective complaints and not [o]n the clinical findings.

(AT 26.) This conclusion is supported by substantial evidence in the record. (See AT 69, 218, 317-21, 492-514.)

First, having seen plaintiff very infrequently over two years, Dr. Hall did not have the kind of long-term and frequent treating relationship with plaintiff that would lend extra credence

---

[4] A global assessment of functioning or "GAF" score reflects a clinician's rating, on a continuum of mental health-illness (0-100), of a patient's overall functioning. Diagnostic and Statistical Manual of Mental Disorders, (4th Edition 1994) (DSM-IV), American Psychiatric Ass'n, pages 30-32.

to her opinion. (AT 492-514.) Second, while Dr. Hall's checklist opinion includes a brief narrative attachment, the information included is largely based upon plaintiff's mother's subjective complaints, not objective clinical findings. (AT 218.) Third, the ALJ accurately characterized Dr. Hall's GAF score findings, and reasonably determined that they undermine the severe limitations she opined. (AT 494, 511.) Fourth, the ALJ's findings that plaintiff was not compliant with his medication is supported by plaintiff's own testimony that he does not remember ever taking any medication (AT 69), as well as the ALJ's observations that "it does not appear that the claimant's mother was diligent in trying to find a medication regime that would help with the claimant's symptoms as she only sought medication management twice with an almost two year gap in between treatment." (AT 25, 317-21, 492-514.)

ii. **Opinion of Ms. Baker**

On January 24, 2014, plaintiff's mother and Erika Baker from Horizon Charter Schools completed a teacher questionnaire. (AT 461-68.) Plaintiff's mother and Ms. Baker indicated that plaintiff had serious problems functioning in all domains except for "moving about and manipulating objects." (Id.) The ALJ rejected this opinion, explaining

> the opinions of laypeople are far less persuasive on those same issues than are the opinions of medical professionals as relied on herein. Further, the claimant's first grade teacher offered conflicting information by reporting in one statement that the claimant made progress with behavioral therapy such that he had good behavior with her and was able to share as well as able to explain things well verbally, but then stated in her questionnaire that he had a very serious problem socially and caring for himself. [citing AT 561-62.] Further, she reported that he was at grade level in all subjects but also had a very serious problem with acquiring and using information as well as attending and completing tasks, which again seems contradictory. Most important, the clinical or diagnostic medical evidence that is discussed more thoroughly above does not support these statements.

(AT 26.)

Plaintiff correctly points out that "[o]pinions from non-medical sources, such as teachers, can outweigh the opinion of a medical source if the opinion is more consistent with the evidence as a whole." (ECF No. 31-1 at 15 (citing SSR 06-03p).) However, the ALJ reasonably concluded that the opinion of Ms. Baker was not consistent with the clinical and diagnostic medical

7

evidence as a whole.

The ALJ's conclusion here is supported by substantial evidence in the record. While the plaintiff would interpret the evidence differently, the ALJ reasonably determined that Ms. Baker's own findings—that plaintiff "is very good with teacher. . . . was proud about sharing the assignments he had done" (AT 562) and that he was at grade level for his reading, writing, and math instruction (AT 461)—were inconsistent with the very serious limitations she otherwise opined. (AT 461-68.) Indeed, plaintiff's own mother indicated that plaintiff had made some progress, in the report countersigned by Ms. Baker. (AT 561.) That another reviewer could reach a different interpretation of this evidence—namely, by giving more weight to plaintiff's mother's subjective complaints—does not undermine the validity of the ALJ's interpretation. See Jamerson, 112 F.3d at 1067.

Furthermore, the ALJ cited to other evidence in the record to support his conclusion that the extreme limitations opined by Ms. Baker are inconsistent with the record as a whole. For example, the record demonstrates that plaintiff's mother reported to physicians "that the claimant was academically advanced and bored in class." (AT 24, 305-13.) Dr. Hall's GAF scores of 51-60 indicate moderate symptoms that belie disability. (AT 494, 511.) Also, plaintiff's mother did not seek treatment between August 2013 and March 2014. Then, in March 2014, she requested disability paperwork and that plaintiff be tested for autism, which ultimately revealed that plaintiff did not meet the criteria for an autistic disorder. (AT 24-25, 474-78.)

Additionally, the ALJ pointed out that in June of 2014, plaintiff was taken to "an Occupation Therapy evaluation and it was determined that based upon his results he did not qualify for occupational therapy." (AT 25, 678-83.) Then, in December 2015, plaintiff was reevaluated and tested well below average for visual perception skills. (AT 25, 776-80.) Further testing was recommended, but still plaintiff did not qualify for occupational therapy. (AT 779) In January 2016, plaintiff's mother "reported that he had not been taking medication since 2014." (AT 25, 808.)

Despite this substantial evidentiary support, plaintiff asserts that the ALJ's conclusion regarding Ms. Bakers opinion is fatally undermined because he misconstrued the record regarding

8

Ms. Baker's relationship with plaintiff. (ECF No. 13-1 at 15-16.) Specifically, the ALJ found that in August 2013, "the claimant was starting first grade and attending regular classes with a behavioral plan in place." (AT 24.) Plaintiff asserts that this is incorrect, as plaintiff had been homeschooled since first grade. (AT 67.)

It is not apparent, however, that the ALJ's statement is truly inconsistent with the record. Plaintiff's medical records indicate that he participated in a special day class with no 504 plan, but with accommodations (AT 679) and records from his charter school show that he was in the first grade in regular education, with no educational disabilities or special education requirements noted (AT 455). Yet, even assuming that the ALJ technically erred in his characterization of plaintiff's schooling during the first grade, any error is harmless as this error does not affect the rest of the ALJ's sound analysis and reasoning. See Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) ("we may not reverse an ALJ's decision on account of an error that is harmless").

Therefore, the court finds that the ALJ provided several specific and legitimate reasons for discounting the opinions of Dr. Hall and Ms. Baker.

> 2. *Whether the ALJ's functional equivalence analysis is supported by substantial evidence*

Under the functional equivalence analysis, the ALJ should "always evaluate the 'whole child'. . . unless [she] can make a fully favorable determination or decision without having to do so." SSR 09-1P (S.S.A. Feb. 17, 2009). This evaluation involves the consideration of "how the child functions every day and in all settings compared to other children the same age who do not have impairments" and by using the six domains, "creat[ing] a picture of how, and the extent to which, the child is limited." Id.; see 20 C.F.R. § 416.926a(a), (b)(1).

The ALJ should "rate the overall severity of limitation in each domain to determine whether the child is 'disabled' as defined in the Act." SSR 09-1P. A child is "disabled" under the Act, if the ALJ finds "marked" limitations in at least two domains, or an "extreme" limitation in at least one domain. 20 C.F.R. § 416.926a(a), (e). "To determine whether there is a 'marked' or an 'extreme' limitation in a domain, [the ALJ] use[s] a picture constructed of the child's functioning in each domain." SSR 09-1P. Importantly, "[t]here is no set formula for applying

these considerations in each case." Id.

Here, plaintiff asserts that the ALJ erred in his functional equivalence analysis because the record demonstrates that plaintiff has at least a marked limitation in both "acquiring and using information" and "attending and completing tasks," as well as an extreme limitation in "interacting and relating with others." (ECF No. 13-1 at 12-28.)

i. **Acquiring and Using Information**

In the domain of "acquiring and using information" an ALJ is directed to consider how well the child acquires or learns information, and how well the child uses the information he has learned. 20 C.F.R. § 416.926a(g); SSR 09-3p (S.S.A. Feb. 17, 2009).

Here, the ALJ determined that

> The claimant has less than marked limitation in acquiring and using information. Throughout the record, the claimant has been noted as academically advanced and achieving average to above average scores in all subjects for his grade. [citing AT 230, 309, 461.] Further, there is no evidence in the record showing that he has ever needed special education or that he needed to be held back a grade due to a cognitive problem. Nonetheless, in great deference to the claimant, the undersigned finds that he has a less than marked limitation in this area.

(AT 27-28 (emphasis in original).) This conclusion is supported by substantial evidence in the record. (See AT 230, 309, 461.)

Plaintiff does not dispute the evidence cited by the ALJ, rather he argues that the ALJ erred because (1) the ALJ relied solely upon plaintiff's "grades and the fact that he is not in special education" and (2) the ALJ ignored that plaintiff "tested in the first percentile on the Test of Visual Perceptual Skills – Third Edition" during his second occupational therapy evaluation. (ECF No. 13-1 at 23-24.)

However, the Ninth Circuit has held that a "claimant's grades in school constitute substantial evidence in support of the Commissioner's finding that claimant is not disabled." Jamerson, 112 F.3d at 1067.

Moreover, the ALJ discussed plaintiff's visual perception test, elsewhere in his decision. (See AT 25.) "He tested well below average for visual perception skills and he was sent for further testing" (citing AT 776-80).) The ALJ did not err by failing to explicitly discuss this test

for a second time, when considering plaintiff's limitations in this domain. When "interpreting the evidence and developing the record, the ALJ does not need to 'discuss every piece of evidence.'" Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003) (citations omitted). "[T]he ALJ is not required to discuss evidence that is neither significant nor probative." Id.

What is more, "[a]s a reviewing court, we are not deprived of our faculties for drawing specific and legitimate inferences from the ALJ's opinion. It is proper for us to read the . . . opinion, and draw inferences . . . if those inferences are there to be drawn." Magallanes v. Bowen, 881 F.2d 747, 755 (9th Cir. 1989). Here, the court may infer that the ALJ did not find this test score to be significant to his functioning in this domain, especially in light of the fact that plaintiff did not qualify for occupation therapy when he exhibited this score, which the ALJ noted elsewhere. (See AT 25, 278-83, 776-80.)

### ii. **Attending and Completing Tasks**

In the domain of "attending and completing tasks" an ALJ is directed to consider a child's ability to focus and maintain attention, and to begin, carry through, and finish activities or tasks, including the pace at which the child performs activities and the ease with which she changes them. 20 C.F.R. § 416.926a(h); SSR 09-4P (S.S.A. Feb. 18, 2009).

Here, the ALJ determined that

> The claimant has less than marked limitation in attending and completing tasks. From the record, it appears that the claimant was only recently diagnosed with ADHD and is not taking any medication for this disorder. [citing AT 807-10.] Nonetheless, even with his difficulty concentrating he has been able to achieve average to above average scores in all subjects during his entire academic career indicating that his attention problems are not debilitating to his ability to learn and acquire information.

(AT 29 (emphasis in original).) This conclusion is supported by substantial evidence in the record. (See AT 230, 309, 461, 807-10.)

Plaintiff does not dispute the evidence cited by the ALJ, rather he argues that the ALJ erred because (1) "[c]laimant's high grades are not the appropriate measure of his ability to attend and complete tasks" and (2) Ms. Baker's opinion demonstrates that plaintiff has a marked limitation in this domain. (ECF No. 13-1 at 27-28.) These arguments are unavailing because, as

11

explained, plaintiff's grades constitute substantial evidence to support the ALJ's finding, and the ALJ provided sufficient reasons for discounting the opinion of Ms. Baker.

### iii. **Interacting and Relating with Others**

In the domain of "interacting and relating with others" an ALJ is directed to consider a child's ability to initiate and sustain emotional connections with others, develop and use the language of his community, cooperate with others, comply with rules, respond to criticism, and respect and take care of the possessions of others. 20 C.F.R. § 416.926a(i); SSR 09-5P (S.S.A. Feb. 17, 2009).

Here, the ALJ determined that

> <u>The claimant has marked limitation in interacting and relating with others</u>. The claimant has a history of oppositional behavior with his teachers and peers as well as appears to isolate himself and has difficulty making friends or interacting with others. However, the record shows that at his multiple evaluations he was cooperative with the examiner and acted appropriately indicating that when motivated he is able to function well in this area. [citing AT 476-78, 678-84, 776-80, 807-12.] Nonetheless, in consideration of the record showing a history of his difficulty interacting and relating with others, the undersigned finds that he has a marked limitation.

(AT 30 (emphasis in original).) This conclusion is supported by substantial evidence in the record. (<u>See</u> AT 476-78, 678-84, 776-80, 807-12.)

Indeed, plaintiff does not challenge the evidence cited by the ALJ. Instead, plaintiff asserts that the ALJ did not properly weigh the evidence—including Ms. Baker's opinion—when determining that plaintiff had a marked, rather than an extreme, limitation in this domain. (ECF No. 13-1 at 21-23.) But, the ALJ's conclusion reflects a reasonable weighing of the evidence in the record.

Whether the record may sufficiently support plaintiff's interpretation of the evidence is not the appropriate question. <u>Jamerson</u>, 112 F.3d at 1067. Where, as here, the evidence is susceptible to more than one rational interpretation, the court must uphold the ALJ's conclusion. <u>Tommasetti</u>, 533 F.3d at 1038.

/////

/////

## V. CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 13) is DENIED.
2. The Commissioner's cross-motion for summary judgment (ECF No. 15) is GRANTED.
3. The final decision of the Commissioner is AFFIRMED, and judgment is entered for the Commissioner.
4. The Clerk of Court shall close this case.

IT IS SO ORDERED.

Dated: December 12, 2018

_/s/ Kendall J. Newman_
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE